McCUE v. BROOKLYN HEIGHTS R. CO.

(Supreme Court, Appellate Division, Second Department.   February 23, 1912.)

Appeal from Trial Term, Kings County.

Action by Thomas McCue against the Brooklyn Heights Railroad Company.   From a judgment for plaintiff, and from an order denying a motion for new trial made on the minutes, defendant appeals.   Affirmed.

Argued before JENKS, P. J., and HIRSCHBERG, WOODWARD, BURR, and RICH, JJ.

D. A. Marsh, for appellant.

Frederick N. Van Zandt (Joseph A. Burdeau, on the brief), for respondent.

PER CURIAM.   Judgment and order affirmed, with costs.

HIRSCHBERG, WOODWARD, and RICH, JJ., concur.

BURR, J.   I dissent.   There was a sharp conflict of evidence in this case; but, assuming the facts to be as testified to by the witnesses for the plaintiff, it appears that McCue, the plaintiff, was employed by the defendant in its car barn, and that he was an experienced motorman.   On the night of the accident a sand car had been run into the barn.   Holzsky, who was a car cleaner, attempted to move it.   This was not only no part of his duty, but he had been forbidden to do it, although he claims that on two previous occasions he had done so.   On the latter of these he was reproved for so doing.   He does not claim that any one gave him instructions to move the car on the night in question.   Apparently it was an officious and unauthorized act.   He moved the car about 25 or 30 feet, and stopped it about a foot and a half from a car in front of it.   He says that he then put the controller on, in order to move it this short distance, intending to jerk the controller off, but for some reason he was unable to do so, and the sand car struck the car in front, knocked the controller handle off, and as it was pushing the cars ahead of it he pulled the pole down from the trolley wire and stopped it.   There is no evidence that his inability to remove the controller handle was due to any defect.   On the contrary, the evidence is undisputed that after the accident the car was examined and everything about its appliances found to be in good working order.   Holzsky jumped off the car, saw plaintiff standing there, and says that he intended to ask him for a pair of handles which he had in his hand, to cut the power off; but, because McCue reproved him for moving the car, he became frightened and ran to find Moore, the depot superintendent.   He told him that the car had run away, but gave him no explanation as to the cause thereof, and it was not until the next morning that he made any statement to any one about having any trouble with the controller handle.   As a result of the collision, four or five cars had been pushed some considerable distance; the forward end of one of the cars breaking through

a partition into the adjoining stockroom. According to plaintiff's evidence, Moore came out to see what the difficulty was, and after he had looked at the cars said to him:

"Mike, put on the pole and run this car back there, till I see the amount of damage that is done."

Plaintiff admits that he knew of the fact of the collision, and that he did not ask Holzsky what had caused it, did not get upon the car to see what the trouble was, or do anything to ascertain the condition of the car. He stepped between the cars and put the pole on the wire. The power was on, and as a result the cars were moved together and he was crushed. Plaintiff admits that when he went between these cars he did not know whether the power was on or off, and that he could have put the trolley pole on by standing on the back platform or on the bumper. It is true that he says that the last was a dangerous place upon which to stand. If that is so, the position between the cars was still more dangerous. Plaintiff says that he noticed before he placed the pole on the wire that there was no controller handle on the car, and at that time he had one in his hand which would have fitted it. He admits that if he had gone on the platform of the car he could have told in an instant whether the power was on or off.

If we assume, for the sake of the argument, that the notice under the employer's liability act was sufficient, and if we assume, for the sake of the argument, that Moore's direction to him was an act of superintendence, and if we assume, for like purpose, that section 42a of the railroad law applies, so that Moore was a vice principal, still plaintiff has not made out his case. Moore gave no directions to him as to how he was to put this pole on. He simply told him to do the act. Plaintiff selected his own method of doing it, and it proved to be a dangerous one.

Viewed as a common-law action, defendant's liability is not established. The evidence shows that plaintiff had more knowledge of the dangerous conditions at that time existing than Moore had, and was equally well informed as to the dangers resulting therefrom. He knew that, if the power was not off, it was a dangerous thing to attempt to put the pole on while standing between two cars on the track. Yet he took no pains to ascertain whether the power was on or off, although by stepping upon the car he could have ascertained this. He took a dangerous position between the cars, although it would have been entirely feasible for him to have replaced the pole from the platform, which position would have been entirely safe, so far as he is concerned, even though the power was on.

I think clearly the plaintiff has failed to prove any negligent act on defendant's part, or his own freedom from contributory negligence.

JENKS, P. J., concurs.